# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SALAH PIROTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Case No.  09-221 (RJL) |
| | ) | |
| CHAIRMAN, BROADCASTING | ) | |
| BOARD OF GOVERNORS, | ) | |
| | ) | |
| Defendant. | ) | |

**FILED**

SEP 3 0 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## MEMORANDUM OPINION
(September 29, 2011) [Dkt. #21]

Plaintiff Salah Piroty ("Piroty") has sued the Chairman of the Broadcasting Board

of Governors, in his official capacity, alleging unlawful discrimination on the bases of

gender, national origin, and age and a violation of the Administrative Procedure Act

("APA") for the hiring of two non-U.S. citizens over him.  Defendant has moved for

summary judgment on the discrimination claims ("Count I") and for judgment on the

pleadings on the APA claim ("Count II").  There being no genuine issue of material fact,

defendant is entitled to judgment as a matter of law as to Count I.  As to Count II,

defendant's motion must also be GRANTED, because plaintiff has utterly failed to state

a claim upon which relief can be granted.

## BACKGROUND

The Broadcasting Board of Governors ("BBG" or "defendant") is the federal

agency responsible for the U.S. government's civilian international broadcasting.  As

such, it supervises a network of individual broadcasting services, including the Voice of America ("VOA")—and therefore its sub-element, the Kurdish Broadcasting Service ("Kurdish Service"). 22 U.S.C. § 1464a; Pl.'s Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp'n") 3 [Dkt. #22]. Congress has mandated the VOA to provide "accurate, objective, and comprehensive" news that "present[s] the policies of the United States clearly and effectively." 22 U.S.C. § 6202(c); *see also Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 496 (D.C. Cir. 2009) ("The VOA transmits new, educational, and cultural programming around the world in more than 40 different languages to an estimated global audience of more than 100 million people."). Within the VOA, the Kurdish Service broadcasts to audiences in Iraq, Iran, Turkey, and Syria in the two primary Kurdish dialects, Sorani and Kurmanji. Pl.'s Opp'n 3; Def's Mem. Supp. Summ. J ("Def.'s Mem.") 3-5 [Dkt. #21].

Piroty, a 40 year-old naturalized citizen of the United States and an Iranian-Kurd by origin, has worked as a contractor in the Kurdish Service since 2002. Compl. ¶ 3, 7 [Dkt. #1]; Pl.'s Stmt. Mat. Facts ("Pl.'s Stmt. Facts") ¶ 3 [Dkt. #22-1]. In this position, Piroty has served as an emcee and news anchor, conducted interviews, and produced special reports. *See* Pl. Ex. 1, Jawhary Dep. 222.

On or about September 6, 2007, the Kurdish Service advertised openings for two, full-time International Broadcaster positions. Compl. ¶ 8; Def.'s Mem. 5. Plaintiff applied and was interviewed by a three-person panel consisting of the current chief of the Kurdish Service; the managing editor of the VOA's Near East and Central Asia Division, which encompasses the Kurdish Service; and an international broadcaster from the Uzbek

2

Service. Compl. ¶ 9; Pl.'s Stmt. Facts ¶ 13. The chief of the Kurdish Service ("the

Service chief"), however, was responsible for the final hiring decision, with approval by

the Near East and Central Asia Division's director. Pl. Ex. 10, Dahiyat Dep. 79-80; Pl.'s

Opp'n 3. The panel interviewed fourteen candidates, who had submitted written

applications detailing their "knowledge, skills, and abilities" to serve in this position.

Def. Ex. 1, Vacancy Announc.; Def. Ex. 16, Candidate List.

     During the interviews, the panel asked all the candidates the same questions and

took notes on their responses. Pl. Ex. 1, Jawhary Dep. 172; *see also* Def. Ex. 15,

Question List; Def. Ex. 16, Candidate List. All three interviewers recalled that Piroty had

difficulty answering interview questions and, at times, seemed to misunderstand the

questions. Pl. Ex. 1, Jawhary Dep. 266; Pl. Ex. 3, Suerdem Dep. 285; Pl. Ex. 16,

Imamova Dep. 63. As such, when the panel finally ranked the applicants, Piroty came

out sixth out of the fourteen candidates. Pl. Ex. 1, Jawhary Dep. 192; Pl. Ex. 3, Suerdem

Dep. 147-40; Pl. Ex. 16, Imamova Dep. 50; Def. Ex. 17, Suerdem Notes 313. Not

surprisingly, the top two ranked candidates, Mr. Tahir and Ms. Pasha,[1] were ultimately

selected by the Service chief for the two broadcaster positions. Def. Ex. 13, Justification

Memorandum ("Justification Memo") 55. However, because the selectees are both non-

U.S. citizens, the Service chief prepared a justification memo explaining why they were

---

[1]     Tahir is a male of Iraqi origin, who was approximately twenty-five at the time of
the selection, Pl. Ex. 25, Tahir Dep. 8-9, 11; Pasha, a female also of Iraqi origin, is two
years older than Piroty. Def.'s Mem. 27; *see also* Pl.'s Opp'n 16.

more qualified than the various U.S. citizen applicants, like Piroty.  Pl.'s Opp'n 14;

Def.'s Mem. 11; *see also generally* Def. Ex. 13, Justification Memo.[2]

 After learning he was not selected, Piroty initiated Equal Employment

Opportunity ("EEO") counseling and then filed an EEO complaint.  Compl. ¶ 5.  Those

actions having been unsuccessful, Piroty initiated this case in February 2009.  *Id.*

## ANALYSIS

**I. Standard of Review**

 **A. Summary Judgment**

 Summary judgment is appropriate where "the movant shows there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  While a court must draw all justifiable inferences in favor of the

non-moving party, the non-moving party "may not rest upon the mere allegations or

denials of his pleading, but must set forth specific facts showing that there is a genuine

issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (citing Fed.

R. Civ. P. 56(e)).  "Thus, if the evidence presented by the opposing party is 'merely

colorable' or 'not significantly probative,' summary judgment may be granted." *Burke*

*v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (quoting *Anderson*, 477 U.S. at 249-50).

---

[2] In the justification memo, the Service chief lauded the selected candidates'
experience in writing, editing, and reporting; on-air abilities; command of English and
Kurdish, as well as other languages; knowledge of the primary target area; and positive
aspects of their interviews.  Def. Ex. 13, Justification Memo 56-57.  In contrast, the
Service chief assessed that Piroty's on-air broadcasting skills and original writing ability
were not as strong and that he was "lacking in his knowledge about Iraqi Kurdistan, the
primary target area of VOA Kurdish broadcasts." *Id.* at 57.

### B. Judgment on the Pleadings

A motion for judgment on the pleadings should be granted "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Longwood Vill. Rest., Ltd. v. Ashcroft,* 157 F.Supp.2d 61, 66 (D.D.C. 2001) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)). The standard for assessing such a motion is the "same as that applied to a motion to dismiss for failure to state a claim upon which relief can be granted . . . ." *Covad Commc'ns Co. v. Revonet, Inc.,* 250 F.R.D. 14, 18 (D.D.C. 2008) (internal citations omitted).

### II.    Defendant Is Entitled To Summary Judgment As To Count I.

Piroty claims discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. Title VII establishes two elements for an employment discrimination claim: "(i) the plaintiff suffered an adverse employment action (ii) because of the employee's ... sex, or national origin." *Brady v. Office of Sergeant at Arms,* 520 F.3d 490, 493 (D.C. Cir. 2008). If the employer asserts a legitimate, non-discriminatory reason for the adverse action, however, the Court need only determine at the summary judgment stage whether "the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin[.]" *Id.* at 494. The same approach applies to age discrimination claims under the ADEA. *See Baloch v.*

*Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (applying *Brady* framework to ADEA claim).

Here, the BBG has provided a legitimate, nondiscriminatory reason for not selecting Piroty: the selected candidates had both superior interview performances and superior credentials to Piroty's. Def.'s Mem. 2.[3]  In short, BBG proffers that Piroty was not selected because "he simply was not the best candidate." *Id.*  Given this explanation, the burden shifts to Piroty to provide sufficient evidence that the BBG's stated reason is pretextual and that the BBG intentionally discriminated against him. *See Brady*, 520 F.3d at 494-95.  To that end, he argues, first, that the Service chief, the approving official, and the other interview panelists all "lied" about the interview process and the candidates' credentials, Pl.'s Opp'n 16-37, and, second, that he was a superior candidate, *id.* at 37-41. Piroty also alleges direct evidence of gender, national origin, and age discrimination. *Id.* at 12-16.[4]  For the following reasons, I disagree with his assessment and conclude that he has utterly failed to meet his burden.

---

[3]      Curiously, Piroty contends that the defendant's proffered, nondiscriminatory reasons should be confined to the Service chief's justification memo. Pl.'s Opp'n 20-21. That memo, however, was prepared to justify the hiring of non-U.S. citizens over U.S. citizens. Def. Ex. 13, Justification Memo 54. Thus, there is no reason to exclude defendant's proffered reasons from consideration.

[4]      Piroty also contends that the BBG failed to support its motion under Local Rule 7(h), and has thus conceded his arguments, because its statement of material facts does not "isolate the factors by which the candidates were judged and the qualifications that the Defendant alleges Mr. Piroty" lacked. Pl's Opp'n 11.  It is within the court's discretion to make such a determination, *Burke*, 286 F.3d at 518, and I reject plaintiff's argument here, *cf.* Def.'s Mem. 8-11, 24-27 (providing detailed explanation of selection factors and supporting testimony).

Piroty offers a laundry list of topics about which the panel allegedly lied but fails to demonstrate that the BBG's proffered reasons for not hiring him are pretextual. He argues, in sum, that the interview panel lied about: the selection factors, Pl.'s Opp'n 16-19; the candidates' interview performances, *id.* at 19-26, 35-37; and Piroty's credentials, *id.* at 26-35. But these allegations are based only on plaintiff's speculation, conjecture, and opinion. Plaintiff, unfortunately, fails to offer any evidence of actual, material misrepresentations and instead relies upon blanket allegations without any supporting evidence. *See, e.g.*, Pl.'s Opp'n 16-17 (claiming Service officials lied about primary target area).[5] Similarly, Piroty relies on nothing more than his own opinions to question the interview process's credibility. *Id.* at 23-24 (claiming that panel did not ask comparable "follow-up questions" when "Piroty mentioned interesting facts" and "ignored Mr. Piroty's impressive linguistic abilities").[6] Such subjective beliefs, of

---

[5]     Piroty argues that the Kurdish Service officials all lied that "Iraqi Kurdistan was the primary target area," Pl.'s Opp'n 3-4, 16-17, but the defendant has noted that while the Service's primary target audience is Iraqi Kurdistan, there is a secondary emphasis on Kurdish populations in Iran, Turkey, and Syria. Def.'s Mem. 4-5. Piroty offers no evidence that Iraq was not in fact the *primary* target area. *See* Pl. Ex. 1, Jawhary Dep. 141-42; Pl. Ex. 3, Suerdem Dep. 60-61; Pl. Ex. 16, Imamova Dep. 120; Def.'s Reply 6; *cf.* Pl.'s Opp'n 17. Piroty's argument that news from any of Iraq, Iran, Turkey, and Syria "could be the most important news topics for the Service" only restates the obvious: news from these countries could be interesting to Iraqi Kurds, and the Service broadcasts to an area larger than its primary target area. *See* Pl. Opp'n 17. Even less persuasive is Piroty's argument that the Service's requirement to select native speakers of both Kurdish dialects is a "significant misrepresentation." *Id.* Piroty fails to explain how this detracts from the defendant's stated reason that he was not the most qualified candidate.

[6]     Piroty does point out some discrepancies among the panelists' testimony. *See, e.g.*, Pl.'s Opp'n 21-22 (pointing out that the other panelists stated that the Service chief shared her knowledge of the candidates and that the Service chief stated that she did not

course, are insufficient to create a genuine issue of material fact. *See Pyne v. District of Columbia,* 468 F. Supp. 2d 14, 21 (D.D.C. 2006) ("Plaintiff's assessment that he was the most qualified for the job does not establish the defendant's explanations are not its true motives."). And, it does plaintiff little good that his allegations of lies about his credentials are either: based on his own subjective conclusions, *see, e.g.,* Pl.'s Opp'n 26-32 (providing subjective assessments of plaintiff's broadcast journalism experience); unsupported, *compare* Pl.'s Opp'n 26 *with* Pl.'s Ex. 16, Imamova Dep. 80 (mischaracterizing panelist's testimony regarding her discussions with Service chief); or immaterial, *see, e.g.,* Pl.'s Opp'n 29 (using opinions of employees that were not part of the hiring process to quibble over plaintiff's credentials). Such speculation is not evidence.

Similarly, Piroty's argument that he was, in fact, a superior candidate also fails. *See* Pl.'s Opp'n 37- 41. Indeed, he offers only the testimony of individuals *not* involved in the selection process, his subjective assessments, and certain credentials that were not presented to the panel. Pl.'s Opp'n 30-33, 37-41.[7] But, the panelists themselves reasonably considered that Piroty's interview performance was inadequate, and their

---

share this information). But, whether the Service chief shared some information about the candidates' credentials is neither a material fact nor one that shows discrimination.

[7]     Piroty relies on his own subjective assertions and the testimony of the former Service chief and two other Kurdish Service international broadcasters. Pl.'s Opp'n 4, 6, 28, 29, 31, 37-43. Although these individuals praised Piroty's skills and, in some instances, claimed that he was superior to the selectees, none of them participated in the hiring decision; and so, their testimony is not probative in assessing the BBG's hiring decision and Piroty's candidacy. Even so, the former Service chief testified that he recommended only Ms. Pasha to the current Service chief. Pl. Ex. 4, Sheikhmous Dep. 12.

contemporaneous notes reflect the same. *See* Pl. Ex. 1, Jawhary Dep. 176-78, 266; Pl.

Ex. 3, Suerdem Dep. 125-26, 129, 285; Pl. Ex. 16, Imamova Dep. 52, 63; Pl. Exs. 17, 18,

19, Panelists' Notes. More importantly, Piroty, by his own admission, had some

difficulty in the interview and failed to demonstrate *to the interview panel* that he met

their requirements, such as adequate knowledge of the target area. Pl. Ex. 8, Piroty Dep.

134-36, 138-39. Thus, in essence, he asks this Court to do that which is legally beyond

its authority: to reconstitute the panel's evaluation criteria. *See* Pl.'s Opp'n 16-18; *see*

*also Barbour v. Browner*, 181 F.3d 1342, 1346 (D.C. Cir. 1999) ("Title VII, it bears

repeating, does not authorize a federal court to become a super-personnel

department....") (internal citations and quotations omitted).

Simply put, plaintiff has failed to produce sufficient direct evidence of

discrimination on the basis of gender, age, or national origin. *Brady*, 520 F.3d at 494-95.

Indeed, plaintiff's reliance on two stray comments pertaining to BBG's preference for a

gender balance on the air is completely unavailing. Specifically, Piroty points to an EEO

counselor's notes that indicate that the Near East and Central Asia Division's director

believed a male/female balance was a consideration for the Kurdish Service. Pl.'s Opp'n

12; Pl.'s Ex. 35, Counselor's Notes at 1248. Second, Piroty relies on the Service chief's

clarification that although the Kurdish Service does not seek to balance male and female

broadcasters, it does, *if possible*, try to maintain such a balance *on the air*. Pl.'s Opp'n

13; Pl. Ex. 1, Jawhary Dep. 139-40. Such comments about structuring radio air-time and

the Kurdish Service, however, are not related to the agency's hiring process. *See also*

*Sewell v. Chao*, 532 F. Supp.2d 126, 139, n.8 (D.D.C. 2008) ("Evidence of discrimination

does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements by decisionmakers unrelated to the decisional process itself.") (internal quotations and citations omitted), *aff'd sub nom. Sewell v. Hugler*, No. 08-5079, 2009 WL 585660, at *1 (D.C. Cir. Feb. 29, 2009).  To the contrary, the panelists specifically testified that gender did not play a role in the hiring process.  Pl. Ex. 1, Jawhary Dep. 139-40; Pl. Ex. 3, Suerdem Dep. 159.  Indeed, one of the selected candidates, Tahir, like plaintiff is a male.  In short, plaintiff has provided no actual evidence to support his gender discrimination claim.

Piroty next alleges the BBG discriminated against him on the basis of national origin.  Not surprisingly, he once again offers insufficient evidence to substantiate this allegation.  For example, he claims a reference in the justification memo to his Iranian national origin, when combined with an assertion that the Service chief did not fully credit his prior news reporting on Iran and a question during his interview about Kurdish language schooling, somehow constitute evidence that the panel was trying to "weed out" non-Iraqi candidates.  Pl.'s Opp'n at 14-15.  None of these, however, either separately or combined, support a reasonable determination of discrimination.  Stray comments relative to plaintiff's national origin, without more, are not *evidence* of discrimination.  This Court need not, and will not, rehash his qualifications based on plaintiff's subjective beliefs.  *See Tolson v. James*, 315 F. Supp. 2d 110, 116 (D.D.C. 2004).  In short, Piroty provides no support for his claim that certain questions were introduced to weed out specific candidates.  To the contrary, it seems reasonable that the selection panel would consider plaintiff's language skills, including schooling in the Kurdish dialects, for a

broadcasting position that requires translation. Such questions do not constitute or imply discrimination.

Finally, Piroty rounds out his discrimination triptych by alleging age discrimination, but once again offers no evidence that constitutes a material issue of fact for a jury. In particular, Piroty merely offers the testimony of the former Service chief, who claims that age "was a factor in the selection that occurred in the Service while he was the service chief." *See* Pl.'s Opp'n 16; Pl. Ex. 4, Sheikmous Dep. 55-57. Piroty also asserts that the defendant "dissembled" in its response to certain discovery requests by claiming to not be aware that Piroty was over the age of 40 or that Tahir was under 40. Pl.'s Opp'n 16. But, neither of these contentions evidence discrimination because: (1) the former chief was *not* employed by defendant when the broadcasting positions were filled, Def.'s Reply Supp. Mot. Summ. J. [Dkt. #27] 9, and, (2) defendant's discovery responses are *not* contradicted by any evidence indicating that the defendant lied. Finally, and most importantly, Pasha, the other selectee, is actually two years older than Piroty. Thus, the evidence allegedly supporting plaintiff's discrimination claim is wholly insufficient to support a reasonable finding of discrimination for plaintiff's claim to survive summary judgment. *See Brady*, 520 F.3d at 494-95.

Thus, plaintiff has failed to provide any affirmative evidence demonstrating that there is a material dispute of fact for a jury. Accordingly, defendant's Motion for Summary Judgment will be GRANTED.

### III.   Defendant Is Entitled To Judgment On The Pleadings As To Count II.

BBG requests judgment on the pleadings on Piroty's APA claim. Def.'s Mem. 2. Our Circuit Court has consistently held that the APA is not the appropriate statutory vehicle to bring a 22 U.S.C. § 1474 claim that challenges the hiring of non-U.S. citizens over U.S. citizens: "[F]ederal employees may not bring employment and personnel suits of this kind under the APA, but instead must pursue such claims through the elaborate administrative and judicial review system set up by the Civil Service Reform Act of 1978." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 447 (D.C. Cir. 2009); *see also Grosdidier*, 560 F.3d at 496 (same). Thus, Piroty's challenge to the BBG's hiring decision *must* be brought under the Civil Service Reform Act, and, as such, defendant's Motion for Judgment on the Pleadings must be, and is, GRANTED.[8]

### CONCLUSION

For the foregoing reasons, defendant's Motion for Summary Judgment as to Count I and Motion for Judgment on the Pleadings as to Count II [Dkt. #21]is GRANTED. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[8]   Plaintiff has also conceded this. Pl's Opp'n 45 n.26.